UNITED STATES DISTRICT
COURT WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                              PLAINTIFF

v.                                                        CRIMINAL ACTION NO. 3:07-CR-151-CRS

ALFRED RIVAS-LOPEZ                                                    DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court for consideration of a motion of the defendant, Alfred Rivas-Lopez, *pro se*, seeking a reduction of his term of imprisonment due to poor health which has placed him in fear of serious illness or death from the COVID-19 virus (DN 697). The Court denied Rivas-Lopez's earlier motion for compassionate release on July 24, 2020 for failure to exhaust his administrative remedies. (DN 690). On August 12, 2020, he filed a request for compassionate release with the warden at the Federal Correctional Institution ("FCI") Oakdale 1. The warden denied his request and Rivas-Lopez appealed. His appeal was also denied. Both decisions noted that Rivas-Lopez did not meet the medical requirements of Program Statement 5050.50 for compassionate release. (DN 697-1). The United States has responded, acknowledging Rivas-Lopez's request to the warden for compassionate release and his appeal of the denial, but stops short of acknowledging that he has now exhausted his administrative remedies. The United States objects to the motion on the ground that Rivas-Lopez is not eligible for compassionate release as he has failed to identify an "extraordinary and compelling" reason warranting a sentence reduction. the merits (DN 703).

The World Health Organization declared the novel coronavirus known as COVID-19 a pandemic on March 11, 2020.[1] The President of the United States declared a national emergency on March 13, 2020 and the Governor of the Commonwealth of Kentucky declared a state of emergency even earlier, after the first confirmed case of COVID-19 on March 6, 2020.[2] As of the date of this writing, there are 153,954,491 confirmed cases worldwide and 3,221,052 deaths; in the United States, there are 32,123,136 confirmed cases and 572,190 deaths.[3] Further elaboration concerning the seriousness of the COVID-19 pandemic is unnecessary. The health risks associated with COVID-19, especially for those individuals confined to nursing homes or incarcerated in our jails and prisons where outbreaks can yield catastrophic results is apparent. However, the developments in the fight against the coronavirus are rapidly evolving worldwide and we must address each inmate's situation individually in the context currently presented when considering requests for compassionate release. Suffice it to say that the Court addresses motions for compassionate release, and Rivas-Lopez's motion in particular here, with the gravity of the situation in mind.

Rivas-Lopez is serving a 108-month prison sentence after pleading guilty in 2008 to conspiracy to possess with intent to distribute 5 kilograms or more of cocaine. Rivas-Lopez escaped from custody and was a fugitive between January 2010 and December 2017. He is incarcerated at FCC Oakdale 1. The medical records indicate that he has been receiving medical care there as needed. (DN 705).

---

[1] *See* Tedros Adhanom Ghebreyesus, Director-General, World Health Organization, Opening Remarks at the Media Briefing on COVID-19 (March 11, 2020) (transcript available at https://www.who.int/dg/speeches/detail/who- director-general-s-openingremarks-at- the-media-briefing-on-covid-19--11-march-2020).

[2] *See* President Donald J. Trump's Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (March 13, 2020), *available at* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel- coronavirus-disease-covid-19-outbreak/; Governor Andy Beshear confirms first case of COVID-19 in the Commonwealth and declares a state of emergency (March 6, 2020), *available at* https://chfs.ky.gov/pages/search.aspx?affiliateId=CHFS&terms=declaration of state of emergency.

[3] *See* Coronavirus Disease (COVID-19) Situation Dashboard, World Health Organization, https://covid19.who.int/ (last visited May 5, 2021).

18 U.S.C. § 3582(c)(1)(A) permits a court to modify a term of imprisonment and grant what is known as "compassionate release" for extraordinary and compelling reasons. Prior to December 2018, motions for compassionate release could only be made by the Director of Prisons. However, the First Step Act, PL 115- 391, 132 Stat 5194 (Dec. 21, 2018), amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to bring such motions on their own behalf "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Rivas-Lopez has provided a copy of a Request for Administrative Remedy which was signed and dated by him on August 4, 2020 and stamped received by the warden on August 12, 2020. (DN 697-1, p. 1). He has also provided a copy of a Response to Regional Administrative Remedy Appeal dated November 30, 2020 denying Rivas-Lopez's October 5, 2020 appeal of the denial of his request for compassionate release. (DN 697-1, p. 2). Rivas-Lopez contends that since more than thirty days has elapsed since his initial request to the warden, he should be deemed to have exhausted his administrative remedies in accordance with what has come to be referred to as the "lapse of 30 days" provision contained in the statute. *United States v. Alam*, No. 20-1298, 2020 WL 2845694, *2 (June 2, 2020)("For a prisoner to take his [compassionate release] claim to court, "he must 'fully exhaust[ ] all administrative rights to appeal' with the prison or wait 30 days after his first request to the prison."). It appears to the Court that while Rivas-Lopez may not have *fully* exhausted *all* of his administrative rights, he has certainly been attempting to exhaust. At the time he filed his motion in this Court, he had purportedly filed an appeal with the "Central Office" of the Bureau of Prisons ("BOP"), presumably the Office of

3

General Counsel, the final administrative review available, but he had not yet received a response. The United States does not contest exhaustion, but rather objects to Rivas-Lopez's motion solely on the merits. We will therefore deem Rivas-Lopez to have exhausted his administrative remedies and we will proceed to consider the merits of his motion.

Rivas-Lopez's motion for compassionate release will be denied for the following substantive reasons.

Under § 3582(c)(1)(A), a court may reduce a defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The court must also consider the "[sentencing] factors set forth in section 3553(a) to the extent they are applicable." § 3582(c)(1)(A).

Congress tasked the Sentencing Commission that, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, [it] shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In the Commentary to U.S.S.G. § 1B1.3, the Commission described four circumstances which constitute extraordinary and compelling reasons for sentence reduction:

(**A**) **Medical Condition of the Defendant.--**

(**i**) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(**ii**) The defendant is--

**(I)**  suffering from a serious physical or medical condition,

**(II)** suffering from a serious functional or cognitive impairment, or

**(III)**   experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(B) Age of the Defendant.--**The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

**(C) Family Circumstances.--**

**(i)** The death or incapacitation of the caregiver of the defendant's minor child or minor children.

**(ii)**   The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

**(D) Other Reasons.--**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

By its own terms, § 1B1.13 applies only "[u]pon motion of the Director of the Bureau of Prisons." This policy statement has not been updated to reflect that defendants may now move the court for compassionate release. The United States Court of Appeals for the Sixth Circuit recently found that "§ 1B1.13 is not an 'applicable policy statement' for *defendant-filed* motions for compassionate release," (*United States v. Tomes*, 990 F.3d 500 (6th Cir. 2021) *citing United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021), and thus it does not constrain the court's analysis of what constitutes extraordinary and compelling reasons for release. *Id*. We may turn to U.S.S.G. § 1B1.13, however, for "helpful guidance" in ascertaining whether extraordinary and compelling reasons exist in a given case that may warrant a sentence reduction. We acknowledge while so doing, however, that this Court is free to define "extraordinary and

compelling reasons" on our own initiative. *See Tomes*, 990 F.3d at 503; *Elias*, 984 F.3d at 519-520.

In his motion, Rivas-Lopez, 42 years old, states that he "was told in 2012 that [he] had a chronic condition by the medical department at my facility." (DN 697, p. 1). He has not specified a particular "chronic condition" to which he refers, nor has he provided any medical records or documentation from a physician to support his statement. Further, the representation appears to be highly questionable since information from the BOP indicates that he was on escape status from 1-11-2010 until 12-12-2017. How Rivas-Lopez could then have been told of a chronic condition by the medical department at his facility in 2012 is a mystery unless he stopped in for a visit, a scenario which appears unlikely. In any event, the United States has provided medical records for most of the year 2020 (DN 705) which do not indicate any condition, chronic or otherwise, which would render Rivas-Lopez more susceptible to an adverse outcome should he contract the COVID-19 virus- the basis for his motion for compassionate release.

Rivas-Lopez states that he fears that if he contracted the COVID-19 virus he would be "more prone to…dying from the virus" because of an underlying condition and "even if I don't have an underlying condition, I am a member of a minority population that is significantly more prone to catching and dying from the virus." (DN 697, p. 2). While the CDC data supports the conclusion that the ratio of hospitalization and death from COVID-19 in the Hispanic population has been two times that for the white and non-hispanic population, the CDC notes that "Race and ethnicity are risk markers for other underlying conditions that affect health including socioeconomic status, access to health care, and exposure to the virus related to occupation." *See*, CDC.gov, *Hospitalization and Death by Race/Ethnicity* (updated Apr. 23, 2021). These

factors are, for our purposes, inapplicable in the prison setting, as there is no disparity in access to healthcare among the incarcerated population nor is there an increased exposure associated with occupation. While the risk of spread in prisons has been of grave concern, we note that currently FCI Oakdale 1 reports no positive cases of the coronavirus among the inmate population. Additionally, of the 805 inmates housed there, the BOP reports that 587 of those inmates have now been fully vaccinated against the disease. (https://www.bop.gov).

Rivas-Lopez has received medical attention as needed at FCI Oakdale 1. (DN 705). Neither Rivas-Lopez's motion nor the medical records provided by the United States evidence a medical condition recognized by the CDC as enhancing the risk of an adverse outcome from COVID-19. As there is no evidence in the record of such complicating health factors, and there are presently no cases of COVID-19 at the facility, Rivas-Lopez has failed to articulate an extraordinary and compelling reason for compassionate release under 18 U.S.C. §3582(c)(1)(A)(i).

Rivas-Lopez does not contend, nor could he successfully, that his sentence should be reduced because he is in poor health. The Sentencing Commission identified terminal illness, or a serious physical, medical, or mental condition that substantially diminishes the ability of the defendant to provide self-care while incarcerated, and which is terminal or an otherwise permanent condition, as evidencing an "extraordinary and compelling" reason for a sentence reduction. While not directly applicable to a defendant's request for compassionate release, the severity of the impairments noted by the Commission to meet the "extraordinary and compelling" threshold suggests that something more than manageable, garden-variety health conditions is required to clear this first hurdle. Rivas-Lopez has not alleged he suffers from a condition or combination of conditions that leave him impaired. Indeed, the only reason he claimed he should

7

be considered for compassionate release is that his medical conditions would increase his potential for an adverse outcome should he contract COVID-19.

Additionally, even when a defendant is statutorily eligible for a sentence reduction based on extraordinary and compelling reasons, compassionate release is only appropriate after consideration of the factors set forth in 18 U.S.C. §3553(a) and where the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 4142(g).

The United States urges under §3553(a)(1), that the nature and circumstances of Rivas-Lopez's crime weigh against release and that he poses a very real danger if released from custody. It contends that his present sentence reflects the seriousness of Rivas-Lopez's crimes and will operate to deter him from the commission of future crimes. The Court agrees with the United States that the present sentence meets the objectives of sentencing and that § 3553(a) factors counsel against reduction of Rivas-Lopez's sentence.

First, Rivas-Lopez admitted that he conspired to possess with intent to distribute 112.5 kilos of cocaine, transporting large quantities of the drug from Phoenix, Arizona to Louisville, Kentucky, in the drive shafts of vehicles. He was supplying large quantities of cocaine to others in the conspiracy. There were 24 defendants charged in this case. Additionally, he escaped in 2010 and avoided serving his sentence for seven years until apprehended. The nature and circumstances of the offense and conduct that indicates a desire to avoid rather than accept responsibility for his crimes militate against a sentence reduction and the danger posed to the community were he to be released appears great.

Rivas-Lopez states that he "has served a majority of [his] sentence and [he has] tried to be a good prisoner and [he works] in the Unicor clothing factory." DN 697, p. 2. He states that he "has learned [his] lesson, sir, and now know how fragile life and health can be and just want to try to

8

provide a safe place for [his] wife and daughter." *Id.* He indicates that his family is in Mexico and that he would like to be considered for compassionate release "so that INS can complete the deportation process, one I will not object to…" *Id.*

The United States has confirmed for the Court that Rivas-Lopez has no history of disciplinary issues while incarcerated and has completed several programs, suggesting that he has adjusted well to institutional life. The United States also acknowledges that Rivas-Lopez had a limited criminal history when he was convicted in this case and would long ago have served out his sentence but for his ability to avoid apprehension for seven years.

This Court has repeatedly been advised by the United States Court of Appeals for the Sixth Circuit that post-sentence conduct is relevant to the Court's determination whether a reduction in sentence should be granted. *United States v. Boulding*, 960 F.3d 774, 784 (6th Cir. 2020)(thorough renewed consideration of the § 3553(a) factors is required; court correctly included post-sentencing behavior as part of that inquiry); *United States v. Williams*, 972 F.3d 815 (6th Cir. 2020)(reversed and remanded because the Court failed to mention the defendant's argument regarding his post-conviction conduct); *United States v. Jenkins*, No. 20-5512 (6th Cir. Feb. 4, 2021)(Remanded for failure of the district court to mention defendant's post-sentence conduct in its explanation of its decision). While it remains wholly within the Court's discretion whether and to what extent to reduce a sentence, the Sixth Circuit requires district courts to give a "complete review" to a motion for sentence reduction under the First Step Act.

Rivas-Lopez's good conduct in prison, completion of various programs, and his employment in the Unicor clothing factory evidence positive efforts which we find laudable. We note, too, that good conduct is expected and rewarded in the prison system. While the Court finds a limited criminal history and exemplary conduct in prison worthy of due consideration, we are

9

troubled by Rivas-Lopez's decision to escape and remain a fugitive for seven years. Additionally, he has only served 3 ½ years, less than 40% of his 9-year sentence.

We will accept at face value Rivas-Lopez's representation that he has "learned [his] lesson" and wants to be deported back to Mexico. We conclude, however, that in imposing sentence, the § 3553(a) sentencing factors were thoroughly and carefully considered, including, among other things, the serious nature of the offenses which involved the interstate transportation of large quantities of cocaine and distribution within a large network of individuals. These are charges to which Rivas-Lopez pleaded guilty. Considering the seriousness of the crimes and taking into account Rivas-Lopez's history and characteristics, this Court found that a sentence of 108 months imprisonment was sufficient but not greater than necessary to promote respect for the law, to reflect the seriousness of the offense, to deter future criminal conduct, to protect the public, and to serve as just punishment for the offense. He did, in fact, qualify for the safety valve under the Sentencing Guidelines which was taken into account in imposing the 108-month sentence. The Court has revisited these factors and finds nothing to call into question the initial determination of the appropriate sentence. The Court finds at this juncture, with the defendant having only served a fraction of the sentence, that a reduction in sentence would undermine the carefully-balanced sentencing factors which are served by the sentence imposed. Further, as noted earlier, we find it necessary to factor the escape into our consideration of how we promote respect for the law. The defendant's good conduct in prison and wake-up call to redirect his attentions away from drug trafficking suggests the efficacy and appropriateness of the sentence. The Court finds no ground to justify any reduction in Rivas-Lopez's sentence.

Motion having been made and for the reasons set forth herein and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion

of the defendant, Alfred Rivas-Lopez, for compassionate release (DN 697) is **DENIED.** The motion of the United States to seal documents (DN 704) is **GRANTED**.

**IT IS SO ORDERED.**

cc: Counsel of Record
Alfred Rivas-Lopez, *pro se*
Reg. #10519-033
FCI Oakdale 1
P.O. Box 5000
Oakdale, LA  71463-500

May 13, 2021

Charles R. Simpson III, Senior Judge
United States District Court

11